In re Loren Russell COTTRILL, Louann Cottrill, Debtors.

Frederick L. RANSIER (Trustee), Plaintiff,

v.

PUBLIC EMPLOYEES RETIREMENT SYSTEM, Defendant.

Bankruptcy No. 2–88–03403.
Adv. No. 2–89–0048.

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 10, 1990.

Frederick L. Ransier, Columbus, Ohio, for plaintiff.

William Damsell, Asst. Atty. Gen., Chief Counsel's Staff, Columbus, Ohio.

Mitchel D. Cohen, Columbus, Ohio, for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM OPINION

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This cause came on for trial on June 1, 1990, upon the Plaintiff/Trustee's Complaint to Avoid a Fraudulent Transfer. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

At trial, many of the relevant facts were stipulated between the parties. The Trustee rested upon those stipulations. The Defendants relied on testimony elicited from the Debtor/Wife, Louann Cottrill, which testimony was uncontroverted. Based upon the record, the Court finds and concludes as follows:

The Debtor/Husband, Loren Cottrill, began his working career in 1944 when he enlisted in the Navy during World War II. Mr. Cottrill served in the Navy for approximately two years, after which he worked with the Veterans Administration for some five years. In 1977, Mr. Cottrill took an employment position with the state of Ohio, where he remained employed until May, 1988. By virtue of his employment with the State, Mr. Cottrill was enrolled in the Public Employee's Retirement System ("PERS"). Also, during his employment, he enrolled in the State's Deferred Compensation Program.

In 1987, Mr. Cottrill began inquiry into available retirement benefits in an effort to plan for his retirement. After consultation with the PERS and Deferred Compensation Personnel, Mr. Cottrill concluded that his retirement benefits would not be sufficient to meet his living expenses and debt service upon retirement. He also discovered that he could receive retirement credit for the seven years of service he devoted to the Navy and the VA, upon payment of a sum certain to PERS. In April, 1988, Mr. Cottrill withdrew the money from the Deferred Compensation program, and deposited the proceeds of approximately $9700 into the checking account that he held jointly with his wife. Shortly thereafter, Mr. Cottrill transferred $8287.36 to PERS to purchase the additional service credits in the belief that, with this additional credit, his retirement benefits would be sufficient to meet his needs and obligations. Mrs. Cottrill, who was Mr. Cottrill's wife for almost 40 years, made no contribution to PERS to obtain the benefits. She did not work during the term of their marriage, except occasionally after their children were grown, and relied upon her husband to support the family and make all financial decisions.

Mr. Cottrill took an early retirement in May of 1988, having felt unwell for a period of time, and began receiving benefits under the PERS plan. Finding that he could not, in fact, meet all of his living expenses and accumulated bills, Mr. and Mrs. Cottrill filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 6, 1988.

Although he had not felt well for some time, Mr. Cottrill did not consult a physician until December of 1988. At that time, he was diagnosed as having a malignant brain tumor which was inoperable. Mr. Cottrill died in February, 1989.

When considering the retirement plans available, the Debtor elected an option to receive benefits for his lifetime, and in any case, his beneficiary would receive benefits for five years. By virtue of election of this option, Mrs. Cottrill receives monthly benefits of $1,064 from PERS, and will continue to receive benefits until May, 1993.

The Debtors' Schedules reflect secured debt of $20,299, and unsecured debt of $20,822. The Schedules further reflect assets of a value of $29,588 (including exemptions) according to the values set by the Debtors.

The Trustee seeks to recover the funds paid to PERS pursuant to Section 548(a)(2)(A) and (B)(i), which provide in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

(B)(i) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer....

The Trustee asserts that Mr. Cottrill did not receive reasonably equivalent value in exchange for the transfer. The Trustee points out that the benefits being paid by PERS are being received by Mrs. Cottrill, who paid nothing for these benefits. This factual scenario of this case presents issues of first impression for this Court, which are important and difficult. Extensive research uncovered no cases directly on point, or even analogous.

■ At the outset, the Court notes that the Trustee has the burden of establishing that the transaction was fraudulent. *Otte v. Landy,* 256 F.2d 112 (6th Cir.1958). Conceding that Mr. Cottrill lacked fraudulent intent, the Trustee must therefore prove that Mr. Cottrill received less than reasonably equivalent value in exchange for the $8,287 he used to purchase PERS credit, and was insolvent at the time he transferred the money.

■ The Trustee has not met his burden of proof in that he has presented no evidence to the Court regarding the issue of value. The record is devoid of any evidence as to the value, e.g. the retirement income that Mr. Cottrill was to receive or did receive by purchasing the additional PERS credit, nor does the Court have any evidence as to what Mr. Cottrill's retirement income would be without the purchase of additional PERS credit. Clearly, a determination of reasonably equivalent val-

ue cannot be made without evidence of the benefit Mr. Cottrill intended to receive by increasing his benefits under his PERS plan. Nor is the Court willing to presume that less than reasonably equivalent value was given by PERS, which was created by the state of Ohio to provide a retirement income for its employees.

Under § 548(a)(2), it is necessary to show lack of an economic benefit flowing to the entity making the transfer. Although it is not exactly clear to the Court, the Trustee seems to assert that because Mr. Cottrill is now deceased, and Mrs. Cottrill is currently receiving the benefits of the retirement plan, there can be no reasonably equivalent value to Mr. Cottrill.[1] Yet, when Mr. Cottrill made arrangements to increase his retirement income, he gave to PERS approximately $8,000, at which point he received a promise from PERS to pay Mr. Cottrill or his beneficiary a retirement benefit for five years. Although Mr. Cottrill did not live to receive the entire five years of retirement income, he did receive eight months of support from PERS. Clearly, if Mr. Cottrill was living today, he would still be entitled to receive the benefits from his PERS plan. Thus, it is clear that he received some benefit and this element of § 548 is not satisfied.[2]

■ It is also manifest that Mr. Cottrill intended that the PERS fund would be used to support both himself and his wife. Case law is clear that the consideration for a transfer by the debtor need not benefit the debtor directly. Instead, the benefit may come to the debtor indirectly through benefit to a third party. If the consideration or value given to the third party ultimately lands in the debtor's hands, or otherwise confers an economic benefit upon the debtor, the estate has been preserved, and there is no voidable transfer under § 548(a)(2). *Rubin v. Manufacturer's*

1. This ambiguity is created by the fact that at the time the Trustee filed his original Complaint, Mr. Cottrill was not deceased. Clearly, if Mr. Cottrill had not died eight months after he had transferred retirement funds, the Trustee's current allegations would be without merit be-

cause Mr. Cottrill would be entitled to receive the PERS benefit as the following will show.

2. As discussed above, there is no evidence of the value of these benefits and the Court is not willing to presume there was insufficient value given.

*Hanover Trust Co.,* 661 F.2d 979 (2d Cir. 1981). Pursuant to O.R.C. § 3103.03, a husband has a statutory duty to support his wife. Therefore, to the extent that the transfer benefitted Mrs. Cottrill at the time it was made, it is not voidable.

■ The fact that Mr. Cottrill died after commencement of this bankruptcy case, leaving benefits payable to Mrs. Cottrill, is *non sequitur.* The Trustee utilizes this recent event to bolster the weak underpinnings of his cause of action. Essentially, the Trustee is equating the instant transaction to one in which a debtor transfers property to his or her spouse in an effort to create an exemption or an exclusion from the estate. This equation made by the Trustee, however, is not appropriate. In light of the fact that both Mr. and Mrs. Cottrill have filed a joint petition for bankruptcy, Mrs. Cottrill can provide no more of a shelter for Mr. Cottrill's assets than Mr. Cottrill can himself. The cases cited by the Trustee in support of his position are of the type in which a debtor has transferred an asset to a spouse in contemplation of bankruptcy, in order to keep that asset out of the reach of creditors. It is clear from the facts of this case that Mr. Cottrill was not attempting to transfer an asset to his wife in order to protect the asset from creditors.

The proper point of reference is the date of commencement of the Chapter 7 case. The application of § 548(a) is expressly limited to those transfers made "on or within one year before the date of filing of the petition." The Court having found that the transfer was not fraudulent at the time this case was commenced and prior to Mr. Cottrill's death, the Court cannot find that the transfer became fraudulent within the meaning of § 548 by virtue of Mr. Cottrill's unfortunate demise post-petition.[3] Under this theory, trustees could pursue avoidability of such transfers until the end of the world, thereby delaying administration and holding cases open indefinitely. This could

not be the intent of the drafters of the Bankruptcy Code.

■ Additionally, because Mr. Cottrill essentially "rolled-over" money from one exempt retirement fund into another, the transfer cannot be considered fraudulent within the meaning of § 548. Under § 2329.66(A)(10)(a) of the Ohio Revised Code, ... "a person's right to a pension, benefit, annuity, or retirement allowance and to accumulated contributions, as exempted by § 145.56 ... is property beyond the reach of creditors and the bankruptcy estate." Section 145.56 states that "the right of a person to a pension, as annuity, or retirement allowance itself ... are exempt ... and shall not be subject to ... the operation of bankruptcy or the insolvency laws, or other process of law ..." Thus, under Ohio law, both the PERS and Deferred Compensation fund are clearly exempt from property of a debtor's estate. The temporary transfer of the Deferred Compensation funds into Mr. Cottrill's checking account, for the purpose of rolling over the funds into the PERS plan, did not cause the asset to lose its exempt status. The only way Mr. Cottrill could transfer the funds to PERS was to act as the intermediary, and personally transfer the money from one plan to the other. This is evidenced by the fact that the State provides no means of rolling over funds from one retirement plan to another, and by the fact that the money remained in Mr. Cottrill's checking account for less than three weeks.

■ In *Love v. Menick,* 341 F.2d 680, 682 (9th Cir.1965), the Ninth Circuit Court of Appeals was faced with a similar situation to the instant case and held: "the deposit of money derived from surrender of an asset, a portion of which, absent surrender, would have already been exempt ... into an account of exempt quality, cannot be held, of itself, to constitute fraud." In *Love,* a debtor surrendered his life insur-

---

**3.** Under all PERS plans, members have the option of designating a beneficiary of the plan benefits upon their death. Therefore, by operation of law, Mrs. Cottrill as beneficiary of Mr. Cottrill's plan, is therefore entitled to receive the

contributions made by Mr. Cottrill, upon his death pursuant to the express terms of the agreement between PERS and Mrs. Cottrill. See, O.R.C. § 145.43.

ance policy for its cash value, and deposited the cash into a savings and loan association. Although this transaction took place only a few days before the debtor voluntarily filed a petition for bankruptcy, the court held that because under state law both assets were of exempt status, the transaction was not fraudulent. Similarly, Mr. Cottrill transferred money from one exempt retirement fund into another exempt retirement fund. The temporary placement of the money in Mr. Cottrill's personal checking account for the specific purpose of transferring the funds, did not cause the asset to lose its exempt status, nor was the transfer fraudulent.

Furthermore, even if the funds did lose their exempt status when they were placed in Mr. Cottrill's checking account, the subsequent transfer of money to PERS is still not fraudulent. It is well established that the mere conversion of property from non-exempt to exempt status on the eve of bankruptcy does not constitute fraud. *In re Beckman*, 104 B.R. 866 (Bankr.S.D.Ohio 1989). Prebankruptcy planning permits the debtor to make full use of the exemptions to which he is entitled, and is not fraudulent as to creditors. *Beckman*, at 870. There being no evidence of fraudulent intent, the Court is not inclined to infer fraudulent intent simply by virtue of pre-retirement or pre-bankruptcy planning by the Debtors.

For the foregoing reasons, judgment will be entered in favor of the Defendants and against the Plaintiff. A separate Final Judgment will be entered in accordance with this Order.

IT IS SO ORDERED.