In re Curtis A. **WADLEY, and Vickie S. Wadley, Debtors.**

**Thomas R. Noland, Trustee, Plaintiff,**

v.

**Curtis A. Wadley, and Vickie S. Wadley, Defendants.**

**Bankruptcy No. 99–35466.**
**Adversary No. 00–3054.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

June 21, 2001.

858

Harry B. Zornow, Hamilton, OH, for Debtors.

Thomas R. Noland, Paul H. Shaneyfelt, Dayton, OH, for Chapter 7 Trustee.

**DECISION AND ORDER GRANTING JUDGMENT TO THE DEBTOR–DEFENDANTS AND DETERMINING THAT:**

1) DEBTOR CURTIS WADLEY'S PRE–BANKRUPTCY CONVERSIONS DO NOT CONSTITUTE FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 548;

2) THE TRUSTEE IS NOT ENTITLED TO AVOIDANCE OF THE TRANSFERS OR TURNOVER OF PROPERTY; AND

3) THE TRUSTEE'S REQUEST FOR REVOCATION OF THE DEBTORS' DISCHARGE IS DENIED.

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(E) and (H).

This matter is before the court on the following pleadings: The Trustee's Amended Complaint to Require Turnover, Avoid Transfers Made by Defendants, Revoke Discharge of the Defendants and For Other Relief [Adv. Doc. # 8–1]; Separate Answer of Defendant Curtis A. Wadley [Adv. Doc. # 9–1]; and Separate Answer of Defendant Vickie S. Wadley [Adv. Doc. # 10–1]. The court also considered the Agreed Stipulations of Fact [Adv. Doc. # 18–1]; the Legal Brief of Thomas R. Noland, Chapter 7 Trustee in Support of Claim Against Debtors for the Recovery of Pre-petition Fraudulent Transfers [Adv. Doc. # 19–1]; the Brief of Defendants [Adv. Doc. # 20–1] and the reply memoranda filed by both parties [Adv. Docs. ## 21–1 and 22–1]. The parties have submitted the matter to the court on the pleadings, stipulations of fact and briefs referenced above. After careful review of these documents, the court is prepared to render its decision.

### FINDINGS OF FACT

The parties have stipulated to the following facts. On March 3, 1992, Curtis Wadley purchased a 1992 Heritage Harley Davidson Motorcycle and placed the title in his name. However, by June of 1999, Curtis Wadley realized he could no longer ride the motorcycle due to surgery that limited the use of his hands.

In early August of 1999, Curtis Wadley and his wife, Vickie Wadley, met with attorney Harry Zornow regarding the filing of a bankruptcy petition. After the meeting and with the knowledge that he and his wife were insolvent and would file a peti-

tion in the near future, Curtis Wadley sold his motorcycle for $12,000.00 on August 23, 1999. Curtis Wadley made the following purchases and payments with the proceeds from the sale:

| 1. | IRS (income tax debt for 1998) | $ 408.25 |
| 2. | PERS (Curtis Wadley's retirement) | $3523.28 |
| 3. | Harry Zornow (bankruptcy attorney) | $ 600.00 |
| 4. | Medical Alert Foundation | $ 178.00 |
| 5. | Glasses Eye Exam | $ 342.67 |
| 6. | Groceries, etc. | $  66.69 |
| 7. | Purchase of Whole Life Insurance Policy (Beneficiary—Vickie Wadley) | $7000.00 |

Following the disbursal of the proceeds in the above manner, the Wadleys filed a joint Chapter 7 bankruptcy petition on October 21, 1999. In their schedules, they declared as exempt that portion of the proceeds from the sale of the motorcycle used to purchase the whole life insurance policy and to augment Curtis Wadley's retirement account.

The Chapter 7 Trustee ("Trustee") did not object to the Debtors' exemptions in the retirement account or the insurance policy. In addition, the Trustee did not timely object to the Debtors' discharge. However, on April 3, 2000, the Trustee filed a complaint to recover the proceeds from the sale of the motorcycle. The Trustee asserts that the conversion of the proceeds from the sale of the motorcycle into exempt assets after meeting with a bankruptcy attorney constitutes fraudulent pre-bankruptcy planning. The Trustee requests turnover of the funds and the revocation of the Debtors' discharge.

### LEGAL ANALYSIS

■ The Trustee asserts that the conversion of the proceeds from the sale of the motorcycle to purchase exempt assets constitutes a voidable fraudulent transfer under 11 U.S.C. § 548. This section of the Bankruptcy Code provides that a trustee may avoid:

(a)(1) ... any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548. The Trustee argues that Curtis Wadley converted non-exempt property into exempt assets to shield the property from creditors which, the Trustee asserts, is an attempt to defraud creditors under § 548. In opposition, the Debtors argue that Curtis Wadley did nothing fraudulent by engaging in prudent pre-bankruptcy planning and making use of the statutory exemptions available to him and his wife under the law.

■ Many bankruptcy courts have addressed the debtor practice of converting non-exempt property into exempt assets in contemplation of a bankruptcy filing. The courts have split in their views regarding whether such pre-bankruptcy conversions may constitute a fraud on creditors. What emerges from the case law is the general proposition that the mere conversion of non-exempt assets into exempt assets does not, by itself, establish fraud. *See Smiley v. First National Bank of Belleville (In re Smiley)*, 864 F.2d 562, 566 (7th Cir.1989); *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 873–874 (8th Cir.1988); *Ransier v. Public Employees Retirement System (In re Cottrill)*, 118 B.R. 535, 539 (Bankr.S.D.Ohio 1990); *Staats v. Beckman (In re Beckman)*, 104 B.R. 866, 870 (Bankr.S.D.Ohio 1989). In coming to this conclusion, courts rely on the legislative history behind the 1978 revision of the Bankruptcy Code. The reports of both the House and Senate Judiciary Committee,

dealing with a debtor's right to claim exemptions, state:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

S.Rep. No. 95–989 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R.Rep. No. 95–595 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963. Clearly, this legislative history encourages, rather than prohibits, a debtor from converting assets to maximize his exemptions prior to a bankruptcy filing which is in harmony with the fresh start policy inherent in the Bankruptcy Code. Even if a debtor converts the assets with the intent to place them beyond the reach of creditors, the debtor's intent cannot be fraudulent because it is in line with the very purpose of exemptions. *Smiley,* 864 F.2d at 567; *Abbott Bank–Hemingford v. Armstrong (In re Armstrong),* 931 F.2d 1233, 1238 (8th Cir.1991). As astutely noted by the Eight Circuit, "[i]f a type of transfer is legitimate . . . the intent to effect such a transfer is merely the intent to exercise a valid right rather than an intent to defraud." *Armstrong,* 931 F.2d at 1238. In other words, the intent to effectuate a legal transfer to exercise one's right to exemptions provided under the law cannot constitute an illegal fraud.

Even acknowledging Congressional intent to allow such pre-bankruptcy conversions, some courts have found an exception when there exists extrinsic evidence of fraud beyond the mere conversion of assets itself. *Beckman,* 104 B.R. at 870. The exception is fact sensitive with a judge's determination often hinging on whether, in the judge's view of the debtor's attempt to maximize exemptions, "a pig becomes a hog." *Albuquerque National Bank v. Zouhar (In re Zouhar),* 10 B.R. 154, 157 (Bankr.D.N.M.1981) (further citations omitted). Factors which courts have considered to determine if extrinsic evidence of fraud is present include the following: 1) whether the transfer occurred immediately prior to the bankruptcy (*Beckman,* 104 B.R. at 871); 2) whether the debtor converted a large amount of assets or the assets were of high value (*Tveten,* 848 F.2d at 876); 3) whether the transfer was a reaction to a judgment entered against the debtor (*Ford v. Poston (In re Ford),* 773 F.2d 52, 55 (4th Cir. 1985)); 4) whether the debtor received inadequate consideration for the transfer (*Panuska v. Johnson (In re Johnson),* 880 F.2d 78, 82 (8th Cir.1989)); 5) whether the debtor continued to use the property transferred (*Wilder Health Care Center v. Elholm (In re Elholm),* 80 B.R. 964, 970 (Bankr.D.Minn.1987)); 6) whether the debtor was rendered insolvent by the transfer (*In re Moore,* 177 B.R. 437, 442 (Bankr.N.D.N.Y.1994)); and 7) whether the conversion was accompanied by concealment or conduct by the debtor calculated to mislead creditors (*Smiley,* 864 F.2d at 568; *Beckman,* 104 B.R. at 871).

After considering these factors, the court concludes that Curtis Wadley's actions do not rise to the level of fraud. His pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors. The sale of the motorcycle and purchase of exempt assets were disclosed to the Trustee and creditors within the Debtors' bankruptcy schedules. Furthermore, no party suggests that the $12,000.00 received by Curtis Wadley in the transfer was less than reasonably equivalent value for the motorcycle or that the transfer was a hoax meant to elude creditors while Curtis Wadley continued to use the property. In fact, the parties stipulated that Curtis Wadley could no longer

use the motorcycle due to limitations in the use of his hands that provided a second valid reason for the transfer beyond maximizing his exemptions.

Finally, the court concludes that the value of the asset transferred is not so high as to render the debtor a "hog." The Trustee compares this situation to *Tveten,* an Eight Circuit case involved a physician debtor who converted $700,000.00 worth of non-exempt assets prior to his bankruptcy filing. 848 F.2d at 872–873. The court concludes that such large transfers are not comparable to Curtis Wadley's sale of one $12,000.00 motorcycle. In summary, the court finds that extrinsic evidence of fraud does not exist in this case.

In his brief, the Trustee returns to the fact that Curtis Wadley transferred the motorcycle with the intent to shield his property from creditors. Again, the court notes that this intent, by itself, does not establish fraud. Like other courts before, this court is not inclined to infer fraudulent intent simply by virtue of a debtor's pre-bankruptcy planning to make use of exemptions provided under the law. *See Cottrill,* 118 B.R. at 539.

For the foregoing reasons, the court concludes that Curtis Wadley's pre-bankruptcy conversions to maximize his exemptions are not fraudulent transfers under 11 U.S.C. § 548. Therefore, the Trustee's request for turnover of the property is denied. Because the conversions are not fraudulent, the Trustee's request for revocation of the Debtors' discharge under 11 U.S.C. § 727(d)(2) is also denied. Judgment is entered in favor of the Debtors and against the Trustee.

It is so ordered.