**In re Leslie L. MOORE, Charlene A. Moore, Debtors.**

**Bankruptcy No. 94–61403.**

United States Bankruptcy Court, N.D. New York.

Dec. 20, 1994.

Randy Schaal, Trustee, Sherrill, NY.

Richard Croak, Albany, NY, for trustee.

James Selbach, Syracuse, NY, for debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The within contested matter is before the Court by way of a motion filed by Trustee Randy J. Schaal ("Trustee") objecting to Leslie and Charlene Moore's ("Debtors") claimed exemption for a certain annuity contract ("annuity"). The Trustee's motion, filed pursuant to Federal Rule of Bankruptcy Procedure 4003(b), asserts that the annuity was purchased with the intent to hinder, delay, or defraud creditors and therefore the claimed exemption is avoidable pursuant to New York Insurance Law ("NYIL") § 3212(e)(1) and Bankruptcy Code § 548(a)(1) (11 U.S.C. §§ 101–1330) ("Code").[1]

At a motion term held in Utica, New York on July 26, 1994, the Court heard oral argument on the within motion. The Court then scheduled an evidentiary hearing for September 26, 1994, and following the conclusion of the evidentiary hearing on that date the matter was submitted for decision.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(B), and (b)(2)(H).

### FACTS

Prior to filing their Chapter 7 petition, Debtors owned, among other assets, two life insurance policies and certain shares of stock. On or about March 9, 1994, Debtors first sought advice from bankruptcy counsel, James Selbach, Esq., ("Counsel"). *See* Trustee's Exhibit "3" Form 1, p. 1. Debtors testified that Counsel advised them to cash in their life insurance policy ("policy") and all of their stock and use the proceeds to purchase an annuity.

Debtors allege that on or about March 23, 1994, they utilized the cash surrender value of their policy and the sale proceeds of the stock to purchase an annuity worth $16,771.67. The cash surrender value of Debtors' policies, which they had owned for 13 years, was approximately $12,000. The proceeds from the stock totaled approximately $4,000.[2]

Debtors testified that they were unable to pay their debts as they became due and on May 18, 1994, Debtors filed a voluntary joint petition for relief under Chapter 7 of the Code. The annuity was properly listed in Schedule "B" and Schedule "C" of Debtors' petition. Schedule "C" lists the annuity as an exempt asset pursuant to NYIL § 3212. The transfer of assets to purchase the annuity was also disclosed in Question 10 of Debtors' Statement of Financial Affairs filed with their Chapter 7 petition and at the initial meeting of creditors. Debtors' petition lists a total of $51,205 in exempt assets and $0 in nonexempt assets.

---

1. The Trustee proposed to assert a Code § 548 cause of action in an adversary proceeding. However, the Debtors explicitly waived any objection to its inclusion in the within contested matter.

2. The parties did not provide an exact breakdown of what portion of the funds used to purchase the annuity were from Debtors' insurance proceeds and what portion were from the sale of stock.

Debtor Leslie Moore testified that he is 60 years old and suffers from memory loss, dizziness, and weakness of the limbs. Debtor Leslie Moore alleges that he has been seeing a physician for ten years and that his symptoms may be caused by multiple sclerosis.

### ARGUMENTS

Debtors assert that their conversion of assets from non-exempt to exempt status merely amounts to permissible pre-bankruptcy planning. Debtors claim that the conversion of non-exempt property to an exempt form is allowable and that extrinsic evidence of fraud must be established by the Trustee for the exemption to be avoided. Debtors argue that permitting pre-bankruptcy planning is consistent with the fresh start policy of the Code.

The Trustee contends that Debtors' last minute purchase of an annuity policy with non-exempt assets was done with the intent to hinder, delay or defraud creditors. The Trustee agrees with Debtors that extrinsic evidence of fraud must be present to avoid the exemption. The Trustee argues that several badges of fraud are present and, as such, Debtors' claimed exemption should be denied pursuant to NYIL § 3212(e)(1) and Code § 548(a)(1).

### DISCUSSION

■ The Code permits the debtor to choose either the exemptions specified in Code § 522(d) or the exemptions available under state and other federal law, unless state law "specifically does not ... authorize" the debtor to select the Code exemptions. *See* Code § 522(b). Under New York law, debtors are prohibited from selecting the Code § 522(d) exemptions. *See* New York Debtors & Creditor Law ("NYD & CL") § 284. Therefore, a New York debtor may only utilize the exemptions available under New York law or under federal law other than the Code. *See In re Maidman,* 141 B.R. 571, 572 (Bankr.S.D.N.Y.1992).

■ Pursuant to NYD & CL § 282, a debtor has three sources of exemptions: (i) the personal and real property exempt under New York Civil Practice Law and Rules ("CPLR") §§ 5205 and 5206, (ii) insurance policies and annuity contracts and the proceeds thereof exempt under NYIL § 3212, and (iii) certain property and the rights to receive certain benefits and property specified in NYD & CL § 282(1), (2), and (3). However, NYD & CL § 283 limits or qualifies the exemptions granted under NYD & CL § 282. *See In re de Kleinman,* 172 B.R. 764, 771 (Bankr.S.D.N.Y.1994).

■ Debtors, as well as the Trustee, direct the Court's attention to NYIL § 3212 to determine the extent, if any, of Debtors' annuity exemption. The Court, however, begins its discussion with an analysis of NYD & CL § 283(1).

NYD & CL § 283(1) contains a $5,000 limit on exemptions that New York debtors in bankruptcy may claim for certain annuities and personal properties under C.P.L.R. § 5205(a). Annuity contracts subject to the $5,000 limitation are those that are:

(a) initially purchased by the debtor within six months of the debtor's filing a petition in bankruptcy, (b) not described in any paragraph of section eight hundred five (d) of the Internal Revenue Code of nineteen hundred fifty-four [3], and (c) *not purchased by application of proceeds* under settlement options of annuity contracts purchased *more than six months before the debtor's filing a petition in bankruptcy or under settlement options of life insurance policies.* NYD & CL § 283(1) (emphasis added).

Debtors purchased their annuity on or about March 23, 1994, and filed their bankruptcy petition on May 18, 1994. *See* Trustee's Exhibit "3". Debtors' annuity, however, was partially purchased with proceeds arising under settlement options of a life insurance policy. Thus, the first issue before the Court is whether Debtors' annuity may exceed the $5,000 exemption limitation because

---

**3.** The Court does not consider this requirement because Internal Revenue Code § 805(d) is no longer in effect.

a portion of the annuity was purchased with proceeds arising under settlement options of a life insurance policy.

■ In an attempt to provide debtors a fresh start, but not instant affluence, New York imposes modest limitations on the exemptions that debtors can claim in and out of bankruptcy. *See In re Bartoszewski,* 36 B.R. 424, 425 (Bankr.N.D.N.Y.1984). Following the legislative signposts, courts also interpret statutory exemptions in a manner necessary to effectuate the policy of a fresh start, not a head start. *See In re Hill,* 95 B.R. 293, 297 (Bankr.N.D.N.Y.1988).

■ As with all New York exemption provisions, NYD & CL § 283(1) balances the debtor's and the creditor's interests. This exemption provision allows debtors to purchase annuities on the eve of bankruptcy in order to preserve up to $5,000 for their fresh start. The language of the exemption statute demonstrates the legislature's intent to balance the debtor's right to a fresh start and limit the debtor's ability to deliberately "load up" on exempt property.

■ It is incumbent on courts not to extend the application of the exemption statute beyond its plain intent. *See Northern New York Co. v. Bano,* 151 Misc. 684, 687, 273 N.Y.S. 694, 698 (N.Y.Co.Ct.1934). Therefore, the Court cannot interpret NYD & CL § 283(1) as allowing annuities, purchased on the eve of bankruptcy, to provide a safe harbor for all non-exempt assets where only a portion of the annuity was purchased with proceeds arising under settlement options of previous insurance policies or annuities. The Court finds that in the matter *sub judice,* the $5,000 exemption limitation is applicable, at least in part, to Debtors' annuity.

■ However, in keeping with the policy recognized by this Court that exemption provisions are to be construed liberally, *see In re Hill, supra,* 95 B.R. at 297, the Court finds that the annuity is fully exempt to the extent it was purchased with funds rolled over from the settlement options of Debtors' life insurance policy. Such an interpretation finds support from the fact that had Debtors not liquidated their life insurance policy to purchase an annuity, the life insurance would

have been exempt pursuant to NYD & CL § 282 and CPLR § 5205(c)(2), (3). The $5,000 exemption limitation of NYD & CL § 283(1) only applies to the portion of the annuity purchased with non-exempt assets. Thus, the portion of the annuity purchased with the funds representing the cash surrender value of Debtors' insurance policy, approximately $12,000, is exempt and the remaining portion of Debtors' annuity is subject to the $5,000 limitation.

■ NYD & CL § 283(1) states that "The aggregate amount that the debtor may exempt from property of the estate for ... benefits, rights, privileges, and options of annuity contracts described in the following sentence shall not exceed five thousand dollars." At the evidentiary hearing, the Trustee argued that the $5,000 exemption limitation of NYD & CL § 283(1) only applies to the distribution from an annuity. Thus, arguably, the principal of the annuity is completely exempt and distributions from the annuity are exempt to the extent of $5,000. The Court cannot agree with such an interpretation.

■ NYD & CL § 283(1) places a $5,000 cap on the "benefits, rights, privileges, and options of annuity contracts." The broad language of this section was intended to place an exemption limit on the principal of the annuity contract, not just distributions from the annuity. If the intent had been to leave the principal of the annuity completely exempt and place a $5,000 exemption limit on just the payments from the annuity, then the New York legislature would have used specific language as they did in other exemption provisions. For example, CPLR 5205(d)(1) specifically exempts the entire trust principal and places a 90% exemption limit on the income from the trust. The Court will not judicially legislate a head start for debtors and upset the delicate balance contemplated by the legislature. *See In re Hill, supra,* 95 B.R. at 297. Therefore, the Court interprets NYD & CL § 283(1) as applying a $5,000 exemption limit on the entire annuity and not just payments therefrom.

■ The $5,000 limitation applies to the aggregate of debtor's exemption under

CPLR 5205(a) and certain annuity contracts. The Court's task of determining whether Debtors' claimed exemption is within the $5,000 limitation is hampered by the parties' failure to provide the Court with an exact amount as to the portion of the annuity funded by nonexempt assets, i.e. Debtors' stock. Therefore, the Court directs that up to $3,800 from the portion of the annuity funded by stock proceeds may be exempted.[4]

The Trustee argues that Debtors' purchase of the annuity with non-exempt assets was done with actual intent to hinder, delay or defraud creditors.[5] The Trustee concludes that the pre-petition transfer of non-exempt assets into the annuity should be avoided.

The Second Circuit has held that a transfer prior to bankruptcy of non-exempt assets does not ipso facto compel the conclusion that there was an actual intent to hinder, delay or defraud creditors. *In re Adlman*, 541 F.2d 999, 1002 (2d Cir.1976). In fact, the fresh start policy of the Code encourages a debtor to make full use of the exemptions to which a debtor is entitled. *In re Barker*, 168 B.R. 773, 775 (Bankr.M.D.Fla. 1994) (citing *In re Decker*, 105 B.R. 79, 83 (Bankr.M.D.Fl.1989)).

There must be extrinsic evidence of an actual intent to hinder, delay, or defraud creditors, aside from the mere transfer, for the court to find the transfer to be fraudulent. *In re Adlman, supra*, 541 F.2d at 1003. The Trustee, as objector to the claimed exemption, bears the burden of proof. Federal Rules of Bankruptcy Procedure 4003(c); *In re Woodford*, 73 B.R. 675, 679 (Bankr.N.D.N.Y.1987) (citations omitted). Therefore, the Court must determine whether the Trustee has presented sufficient indicia or "badges" of fraud to conclude that

Debtors' actions were performed with intent to hinder, delay, or defraud creditors.

Among the factors which courts have examined to determine if fraud is present are the following: (1) whether there was fair consideration paid; (2) whether the debtor was rendered insolvent as a result of the transfer or whether the debtor was insolvent at the time of the transfer; (3) the amount of the transfer; (4) whether there is a genuine purpose for the transfer aside from avoiding creditors; (5) the length of time between the transfer and the filing of bankruptcy; (6) the amount of nonexempt property which the debtor had after the transfer; (7) the debtor's failure to provide available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition. *See In re Beckman*, 104 B.R. 866, 870 (Bankr. S.D.Ohio 1989); *In re Mueller*, 867 F.2d 568 (10th Cir.1989).

The Court notes that of the foregoing factors, 2, 5 and 6 are present in the matter *sub judice*. Debtors converted all of their remaining non-exempt property two months before their bankruptcy petition was filed. Debtors' testimony supports a finding that they were insolvent, on at least an equity test basis, when they purchased their annuity. However, these three factors do not, standing alone, establish extrinsic evidence of fraud. *In re Beckman, supra*, 104 B.R. at 870; *see also In re Johnson*, 8 B.R. 650, 653–654 (Bankr.D.S.D.1981).

The Court does not find that Debtors' actions rise to the level of fraud. Debtors' pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors. Debtors clearly revealed their actions in their bankruptcy petition as well as at the first meeting of creditors. Further, Debtor Leslie Moore's age and medical condition support a finding that the

---

4. Debtors exempt $1,200 under CPLR 5205(a)(5). *See* Trustee's Exhibit "3", Schedule "C". The $5,000 aggregate exemption limitation less $1,200 leaves Debtors with $3,800 that they may exempt under NYD & CL § 283(1). The allowance of such an exemption, of course, is subject to the Court's determination of whether Debtors acted with fraudulent intent. *See* infra at p.

5. The Trustee's fraudulent transfer claim is based on NYIL § 3212(e)(1) and Code § 548(a)(1). Due to the similarity between the Insurance Law provision and Code § 548(a)(1), the Court's analysis addresses the two statutory provisions together.

conversion of non-exempt assets was prudent pre-bankruptcy planning and not done with the intent to defraud creditors. Based on the totality of facts and circumstances presented in this case, the Court concludes that the Trustee has not demonstrated the existence of fraudulent intent on Debtors' part. Accordingly, the purchase of the annuity contract is not subject to avoidance pursuant to NYIL § 3212(e)(1) or Code § 548(a)(1).

For the reasons set forth herein, it is

ORDERED that the claimed exemption of Debtors' annuity is allowed under NYD & CL § 283(1) to the extent said annuity was purchased with the proceeds from Debtors' life insurance policy; it is further

ORDERED that Debtors may claim as exempt, under NYD & CL § 283(1), not more than $3,800 from the portion of the annuity purchased· with proceeds arising from the sale of Debtors' stock; and it is further

ORDERED that the Trustee's objection, pursuant to NYIL § 3212(e)(1) and Code § 548(a)(1), to Debtors' claimed exemption in their annuity is denied to the extent set forth above; and it is further

ORDERED that in the event the Trustee and Debtors cannot agree upon the portion of the annuity policy purchased with the proceeds of Debtors' life insurance policy as well as the portion purchased with the proceeds of Debtors' stock within 30 days of the date of entry of this Memorandum–Decision and Order, then the Court will, upon request of either party, restore this contested matter to its calendar for an appropriate determination.