**In re Nicholas CARLETTA, Larae Carletta, Debtors.**

**UP STATE FEDERAL CREDIT UNION, Plaintiff,**

v.

**Nicholas CARLETTA, Larae Carletta, Defendants.**

Bankruptcy No. 94–6185.
Adv. No. 94–70146.

United States Bankruptcy Court,
N.D. New York.

April 7, 1995.

James Selbach, Syracuse, New York, for debtors Nicholas Carletta and Larae Carletta.

John Nasto, Jr. (Michael Oshins, of counsel), Rome, New York, for plaintiff Up State Federal Credit Union.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter comes before the Court on motions by Up State Federal Credit Union ("Up State") and Nicholas and Larae A. Carletta ("Debtors") in the adversary proceeding commenced by Up State against Debtors. On or about December 13, 1994, Up State filed a motion for summary judgment under

Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7056 which incorporates by reference Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 56. On or about December 19, 1994, Debtors responded by filing a cross-motion for summary judgment, pursuant to Fed.R.Bankr.P. 7056, seeking dismissal of Up State's complaint.

On January 31, 1995, both motions were orally argued at the Court's regular motion term in Utica, New York. The parties agreed that there were no material issues of fact in dispute and the matter was submitted for decision on that date.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(B), and (b)(2)(I).

## FACTS

Upon the advice of their bankruptcy counsel, Debtors purchased Universal Life Insurance policies ("insurance policies") on or about June 24, 1994. Debtor Larae A. Carletta purchased her insurance policy for an initial premium of $3,500.00 and Debtor Nicholas Carletta purchased his insurance policy for an initial premium of $4,062.00. Shortly thereafter, on July 7, 1994, Debtors filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

Debtors testified at the initial meeting of creditors, held on or about August 11, 1994, that they purchased the insurance policies with cash and with their 1993 tax refunds. Debtors openly admit that the proceeds used to purchase the insurance policies represented substantially all of their non-exempt assets. See Debtors' Attorney Affirmation at ¶ 6.

Debtors admit that by using their cash and 1993 tax refund to purchase the insurance policies, they converted non-exempt assets to exempt assets under New York Insurance Law ("NYIL") § 3212. Id.; see also Debt-

ors' Petition, Schedule "C". Furthermore, Debtors admit that they purchased the policies in order to prevent the Trustee, Randy J. Schaal, ("Trustee") from acquiring an interest in their non-exempt assets. See Debtors' Attorney Affirmation at ¶ 6. Debtors claim an aggregate of $16,700.00 in exemptions. See Debtors' Petition, Schedule "C".

On or about September 12, 1994, the Trustee filed an objection, pursuant to Code § 522(l) and Fed.R.Bankr.P. 4003, to Debtors' claimed exemption in the insurance policies. However, on or about December 29, 1994, the Trustee withdrew his objection, in reliance upon the Court's recent decision in In re Moore, 177 B.R. 437 (Bankr.N.D.N.Y. 1994).

■ Up State, a creditor with both secured and unsecured nonpriority claims, filed a complaint commencing the instant adversary proceeding on or about October 7, 1994. Up State, alleging that Debtors converted their non-exempt assets of cash and their 1993 tax refunds with the intent to hinder, delay, or defraud creditors, seeks a denial of Debtors' discharge pursuant to Code § 727(a)(2)(A) and costs and attorney's fees.[1] Issue was joined by the service of an Answer on behalf of Debtors on or about October 21, 1994.

## ARGUMENTS

Up State alleges that summary judgment should be granted on its Code § 727(a)(2)(A) cause of action because Debtors admit that they converted substantially all of their non-exempt property to exempt property on the eve of bankruptcy. Further, Debtors' conversion occurred either while they were insolvent or caused their insolvency. Up State contends that Debtors' admissions are "badges of fraud" which constitute an actual intent to hinder, delay, or defraud creditors.

Up State also offers a policy argument. Up State contends that allowing Debtors to transfer all of their non-exempt property into a vehicle which enjoys an unlimited exemp-

---

1. In its memorandum of law, Up State requests, as almost an afterthought, that "debtors' exemptions should be disallowed ..." Up State's Memorandum of Law at 7. The Court does not consider this request as it is unclear what cause of action Up State is alleging and because the complaint only prays that Debtors' discharge be denied pursuant to Code § 727(a)(2)(A).

tion under state law will result in the extinction of the Chapter 7 "asset" case.

Debtors argue that the conversion of non-exempt assets to exempt assets just prior to filing their petition for relief is permissible pre-bankruptcy planning. These facts alone are not enough to show that Debtors acted with actual intent to hinder, delay, or defraud creditors. Debtors also contend that it is the legislature's duty, and not the Court's, to place limits on exemption statutes.

## DISCUSSION

The general principles applicable to summary judgment motions are familiar and well-settled. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Bankr.P. 7056(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

A motion for summary judgment will be defeated when a 'material' fact is disputed by the parties. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1977). Where the parties agree to the facts and the legal theories, a useful procedural technique is the filing of a cross-motion for summary judgment in opposition to the initial motion.

■ In the matter *sub judice*, the parties agree to the facts and agree that three of the four elements of an objection to discharge under Code § 727(a)(2)(A) are satisfied. *See infra* text at 261–62. The element which remains in dispute is whether Debtors' transfer was made with *actual intent* to hinder, delay, or defraud a creditor. The Court is cognizant of the fact that summary judgment is generally inappropriate where intent forms one of the essential elements of a claim. *See International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1265 (5th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). However, the Court renders a decision on the merits because the parties agree that the only issue remaining is whether, as a matter of law, the stipulated facts establish the requisite intent for a Code § 727(a)(2)(A) cause of action.[2] *See* Discussion at Oral Argument at Court's Regular Motion Term in Utica, New York on January 31, 1995.

Chapter 7 debtors often engage in pre-bankruptcy estate planning in order to protect as much of their property as possible from liquidation. Pre-bankruptcy estate planning is a strategy whereby financially-besieged debtors liquidate non-exempt assets and use the proceeds of that liquidation to purchase exempt property prior to filing a bankruptcy petition.[3] *See In re Johnson*, 80 B.R. 953, 957 (Bankr.D.Minn.1987).

Although the Code does not explicitly authorize pre-bankruptcy estate planning, legislative history supports such conversion of non-exempt assets. For example, House and Senate Reports state: "As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. This practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled to under the law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977); S.Rep. No. 989, 95th Cong., 1st Sess. 76 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6317.

However, not all conversion of non-exempt property is legitimate. Thus, the Code provides the trustee and creditors with provisions to control pre-bankruptcy estate planning. For example, a debtor's claimed exemption can be avoided under applicable state law or under Code § 548(a). In addition, a creditor's debt can be excepted from

---

2. The Court notes that neither party has requested further discovery as permitted under Fed. R.Bankr.P. 7056(f) and there are no unresolved discovery disputes.

3. Pursuant to Code § 522(b), New York debtors may only utilize the exemptions available under New York law or under federal law other than the Code. *See* New York Debtors & Creditor Law ("NYD & CL") § 284.

discharge under Code § 523(a) or, as a more drastic alternative, the court may deny a debtor a discharge of his debts entirely under Code § 727(a)(2).

In seeking to have a debtor denied a discharge pursuant to Code § 727, the plaintiff must establish the elements of the cause of action by a preponderance of the evidence. *See D'Agata v. Hogan (In re Hogan),* Ch. 7 Case No. 93–61202, Adv. No. 93–70123, slip op. at 6 (Bankr.N.D.N.Y. February 24, 1995) (citations omitted). Furthermore, objections to discharge are to be narrowly construed in favor of a debtor and against the creditor to effectuate the fresh start purposes of the bankruptcy laws. *Id.* at 7 (citations omitted).

To succeed on a cause of action based on Code § 727(a)(2)(A) the plaintiff must establish that (1) the act complained of was done at a time subsequent to one year before the date of filing of the petition; (2) the act was done with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Code; (3) the act was that of the debtor or his duly authorized agent; and (4) the act consisted of transferring, removing, destroying, or concealing the debtor's property, or permitting any of these acts to be done. *See Giarrusso Building Supplies, Inc. v. Hogan,* Ch. 7 Case No. 93–61202, Adv. No. 93–70124, slip op. at 15 (Bankr.N.D.N.Y. February 16, 1995) (citations omitted).

The controversy in the instant adversary proceeding focuses on element 2, the actual intent requirement. It is clear that a debtor's intent must be actual, although the finding of intent may be based on circumstantial evidence or inferences drawn from a debtor's course of conduct. *See Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1004–1005 (2d Cir.1976); *In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983). Among the circumstances from which courts have inferred intent to defraud are: (1) concealment of facts and false pretenses by the transferor; (2) debtor engaged in a pattern of sharp dealing immediately prior to bankruptcy; (3) the general chronology of events and transactions under inquiry; (4) the objecting creditor had "special equity" in the nonexempt property which was converted; (5) debtor retained the possession, use, or benefit of the property in question; (6) debtor became insolvent as a result of the transfer and; (7) debtor received inadequate consideration.[4] *See In re Kaiser, supra,* 722 F.2d at 1582; *In re Fine,* 89 B.R. 167, 174 (Bankr.D.Kan.1988).

The record before this Court does not demonstrate that Debtors had the intent to hinder, delay, or defraud a creditor. Debtors did not engage in sharp dealings, act in a secretive manner or make misrepresentations to creditors. Debtors' pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors. Debtors clearly revealed their actions and simply followed counsel's advice in effectuating their rights of exemption as set forth by the New York state legislature.

Furthermore, the majority of debtors file bankruptcy under a similar factual setting as the Carlettas. It is not unusual for debtors to convert substantially all of their non-exempt assets into exempt property on the eve of bankruptcy. For the Court to render a per se rule that this is sufficient extrinsic evidence for a finding of actual intent to defraud would effectively swallow Code § 727(a)(2). *See Hanson v. First National Bank in Brookings,* 848 F.2d 866, 870 (8th Cir.1988) (Arnold, J., concurring opinion). Therefore, absent additional facts[5], the

4. The courts' use of inferences or 'badges of fraud' is more closely related to proving constructive fraud than actual fraud. Nonetheless, courts rely on the badges of fraud because actual intent is rarely susceptible to direct proof. *See In re Kaiser, supra,* 722 F.2d at 1582. Because the complete denial of discharge under Code § 727 is a more severe remedy than that offered under Code §§ 548 or 523, the Court is particularly cautious when relying on inferences to prove actual fraud. *See generally In re Johnson, supra,* 80 B.R. 953.

5. It is important to note that Debtor submitted interrogatories to Up State pursuant to Fed. R.Bankr.P. 7033. Debtors' interrogatories essentially sought any and all information which could be construed as evidence of an intent to hinder, delay, or defraud creditors. Up State, instead of providing factual information regarding Debtors'

Court cannot find that Up State has met its burden of establishing the intent element of Code § 727.

Up State primarily relies on *In re Mehrer*, 2 B.R. 309 (Bankr.E.D.Wa.1980), and *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir.1988), in support of its contention that Debtors' discharge should be denied. Upstate's reliance on *In re Mehrer* is misplaced for two reasons. First, the dispositive law in *In re Mehrer* was a Washington state exemption statute and not Code § 727. *See In re Mehrer, supra*, 2 B.R. at 311–312. Second, the court in *In re Mehrer* disallowed the claimed exemption for a variety of factors not present in the instant case. For example, the debtor in *In re Mehrer* offered conflicting testimony at trial and was unfairly paying off certain chosen creditors. *See Id.* at 310–312. Such extrinsic evidence, which is not present in the matter before this Court, along with other badges of fraud helped the *Mehrer* court conclude that the claimed exemption should be disallowed.

■ In *Norwest Bank Nebraska, N.A. v. Tveten*, the Eighth Circuit affirmed a bankruptcy court holding which denied the debtor a discharge.[6] The debtor, an affluent physician, converted $700,000 of nonexempt property into exempt property on the eve of bankruptcy after consulting with counsel. *See Norwest Bank Nebraska, N.A. v. Tveten, supra*, 848 F.2d at 872–873. The conversions were initiated after one creditor had secured a large judgment against the debtor and after two other creditors had commenced a suit subsequent to the debtor's default on $19,000,000 of personally guaranteed debt. *Id.* at 872. All of the converted proceeds were subsequently invested in life insurance or annuity contracts which enjoyed an unlimited exemption under Minnesota law. *Id.* at 873.

■ Up State argues that although the value of the assets differ, the *Tveten* holding is applicable to the matter *sub judice*. The Court cannot agree with Up State's argument. While unwilling to judicially create dollar limits on exemptions, the Court finds that the amount of non-exempt property converted to exempt assets is relevant to a Code § 727(a) determination. In addition, such factors as debtor's awareness of the judgments against him and the pending suits, coupled with his failing investments, extensive personal liability and incapacity to pay helped develop a portrait of the debtor in *Tveten* which is vastly different than that presented by Up State of Nicholas and Larae Carletta. Therefore, the Court will not mechanically apply the *Tveten* holding to the matter *sub judice*.

Up State also argues that because NYIL § 3212 is an unlimited exemption provision debtors will be able to unfairly pervert the purposes of the Code. *See* Up State's Memorandum of Law at 6. Up State concludes that "allowing the debtors to transfer nonexempt assets into exempt assets ... will result in the extinction of the Chapter 7 asset case." *Id.*

The Court is unpersuaded by Up State's policy argument. The holding of this case will not extinguish Chapter 7 "asset" cases because a determination of fraud is fact specific. As Judge Arnold stated in his concurring opinion in *Tveten*, "[A] debtor will be allowed to convert property into exempt form, or not, depending on findings of fact made in the court of first instance ..." *Norwest Bank Nebraska, N.A. v. Tveten, supra*, 848 F.2d at 870–871; *see also In re Moore, supra*, 177 B.R. at 442 (Court's findings were based on totality of circumstances). Thus, Up State's failure to present a compelling factual record does not doom all Chapter 7 "asset" cases.

For the reasons set forth herein, it is

---

intent, responded to the interrogatories by submitting a memorandum of law.

**6.** Although *Tveten* was a Chapter 11 case, the analysis is the same as in Chapter 7. A Chapter 11 debtor will not be discharged of his debts, despite confirmation of the plan, if he would be denied a discharge under Code § 727. *See* Code § 1141(d)(3)(C). Thus, the objections to discharge under Code § 727(a) apply in Chapter 11 cases under certain limited circumstances. It is interesting to note that despite the Eighth Circuit's holding, Tveten obtained his discharge by negotiating with his creditors through the Chapter 11 process.

ORDERED that Up State's summary judgment motion pursuant to Fed.R.Bankr.P. 7056 is denied; it is further

ORDERED that Up State's request for costs and attorney's fees are denied and; it is further

ORDERED that Debtors' cross-motion for summary judgment dismissing the complaint pursuant to Fed.R.Bankr.P. 7056 is granted.