In re Francis E. ROBINSON, Darla
J. Robinson, Debtors.

No. 00–60938.

United States Bankruptcy Court,
N.D. New York.

June 27, 2001.

James C. Collins, Whitney Point, NY,
for Chapter 7 Trustee.

Frank M. Como, Waverly, New York,
for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently under consideration by the
Court is an objection filed by the chapter 7

trustee, James C. Collins, Esq., ("Trustee") to certain exemptions claimed by Francis E. Robinson and Darla J. Robinson ("Debtors") pursuant to § 283 of the New York Debtor and Creditor Law ("NYD & CL").

The Trustee's objection was initially heard at a regular motion term of the Court in Binghamton, New York, on August 15, 2000. The matter was adjourned to September 12, 2000, and an evidentiary hearing was scheduled thereafter for October 31, 2000, in Utica, New York.

Following testimony from both Debtors on October 31, 2000, the Court requested that the parties submit memoranda of law in lieu of closing arguments. The matter was submitted for decision on November 30, 2000.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1) and (b)(2)(A), (B) and (O).

## FACTS

The Debtors filed a voluntary petition ("Petition") pursuant to chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"), on March 6, 2000. Schedule C, attached to the Petition, identifies several items claimed as exempt by the Debtors pursuant to NYD & CL § 283, including two separate annuities with a value of $2,500 each, issued in each of the Debtors' names. Also listed as exempt are two accounts at the Tioga State Bank held jointly by the Debtors with a total of $5,645 in deposits, of which the Debtors claim $5,000 as exempt. *See* Trustee's Exhibit A.

According to the Debtors' Statement of Financial Affairs, on August 6, 1999, Mr. Robinson, along with his son, John Robin-son, transferred real property consisting of 51.7 acres in the Town of Batron, Tioga County, New York, to Glen Daily, for $32,500. *See id.* Mr. Robinson received $15,051.92 in net proceeds, which were deposited in a trust account with the firm of Luther and Como on August 9, 1999. *See* Trustee's Exhibit D. According to Mr. Robinson, although the closing on the real property occurred after the Debtors had met with their attorney, Frank M. Como, Esq. ("Como"), the property had been advertised for sale for some time prior to that meeting.

Mr. Robinson testified that Como informed the Debtors that they were entitled to certain exemptions. Two checks were issued to Mr. Robinson from the trust account, each in the amount of $2,500. *See id.* It was Mr. Robinson's testimony that $5,000 was deposited into the Debtors' joint checking account. In addition, $5,000 was used to purchase separate annuities of $2,500 in each of the Debtors' names. *See id.* The annuity contracts were executed by the Debtors on August 17, 1999, and issued by First Investors Life Insurance Company on August 23, 1999. *See* Trustee's Exhibit F. Checks were also issued to the Internal Revenue Service in the amount of $1,700, and to the New York State Department of Taxation and Finance in the amount of $200 on or about January 11, 2000. *See* Trustee's Exhibit E. Como was paid $350 and the balance of $2,761.92 was turned over to the Trustee on or about May 1, 2000. *See* Trustee's Exhibit C.

It was also in August 1999 that Mrs. Robinson began receiving treatments in North Carolina for a terminal disease known as polycystic kidney disease. When asked to explain the delay in filing their Petition some seven months after meeting with Como and after the sale of the real

property, Mrs. Robinson testified that her illness and the treatment she receives causes her to sleep sometimes for 20 hours at a time. This, along with the four days per month she spends traveling to North Carolina and receiving treatments, caused a delay in meeting with Como. In addition, she testified that her husband, who is 74 years old, also was ill in 1999, requiring hospitalization on two separate occasions. It was not clear whether this occurred during the seven month period between the sale of the real property and the filing of the Petition. It was her testimony that they attempted consumer counseling prior to deciding to file their Petition, but with three children to support they were not successful. Mrs. Robinson further testified that after seeking legal advice and reviewing their options, they did not make up their minds to file for bankruptcy until approximately a month before they actually did in March 2000. Mr. Robinson testified that he continued to pay their bills right up until they filed because he felt he was "obligated to do so." He also testified that after August 1999 he stopped incurring charges on his credit cards.

## ARGUMENTS

The Trustee does not deny that the Debtors are entitled to the protections afforded to them pursuant to chapter 7 of the Code. It is the Trustee's position that any claim of exemption in excess of $5,000 is a claim to property or proceeds which are subject to avoidance by the Trustee. The Trustee contends that the Debtors circumvented the $5,000 limitation found in NYD & CL § 283(1) by waiting more than six months from the purchase of the annuities using the proceeds from the sale of the real property before filing their bankruptcy petition. The Trustee contends that the delay in filing, along with the fact that the conveyance benefitted Mrs. Robinson,

whom the Trustee describes as an "insider," constitute badges of fraud.

## DISCUSSION

Although the Code does not explicitly authorize pre-bankruptcy estate planning, legislative history supports such conversion of non-exempt assets. For example, House and Senate Reports state: 'As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. This practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled to under the law.'

*In re Carletta*, 189 B.R. 258, 261 (Bankr. N.D.N.Y.1995), quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in U.S.Code Cong. & Admin.News 1978, pp. 5963, 6317; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), reprinted in U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862.

■ Honest debtors are to be given a chance to make a "fresh start." The question is whether the Debtors were acting "honestly" or with the intent to hinder, delay or defraud their creditors. *See In re Krantz*, 97 B.R. 514, 520 (Bankr.N.D.Iowa 1989). It is the Trustee's burden to prove that the Debtors are not entitled to the exemptions based on extrinsic evidence of fraud, aside from the mere conversion of non-exempt assets to exempt assets. *In re Moore*, 177 B.R. 437, 442 (Bankr.N.D.N.Y. 1994), citing *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1002 (2d Cir.1976).

■ In this case, approximately seven months prior to the commencement of the case, Mr. Robinson sold a parcel of real property he owned jointly with his son from a prior marriage to Glen Daily for

$32,500. Mr. Robinson testified that the property had been on the market for a period of time predating the Debtors' consultation with Como. On or about August 6, 1999, Mr. Robinson received $15,051.92 of the sale proceeds, which he deposited into a trust account with Como. No evidence was presented to suggest that the sale price was anything but an arms-length transaction for fair consideration.

Mr. Robinson then deposited $5,000 in the Debtors' joint checking account and used another $5,000 to purchase separate annuities for himself and his wife. These facts closely resemble those found in *In re Breuer,* 68 B.R. 48 (Bankr.N.D.Iowa 1985). In that case, the trustee sought to avoid the transfer of proceeds from the sale of real property into exempt life insurance policies in the names of both debtors pursuant to Code § 548(a)(1). *See id.* at 49. After consulting with an attorney about the possibility of filing bankruptcy and discussing their entitlement to certain exemptions, Mrs. Breuer sold an interest in real property, which was part of her father's estate and owned by her and her siblings, for $50,000. *Id.* The debtors also sold their interest in a time share in a condominium for $1,729. *Id.* The sale of the real property occurred approximately one month prior to filing their petition. *Id.* The proceeds from both of these sales were used to purchase a life insurance policy for an initial premium of $53,600. *Id.* The court concluded that the mere fact of conversion of non-exempt assets into exempt assets was insufficient to serve as a basis for inferring an intent to delay, hinder or defraud creditors. *See id.* at 51. Accordingly, the court dismissed the trustee's complaint. *Id.*

While the matter before this Court is not based on allegations of a fraudulent transfer pursuant to Code § 548, the Trustee's objection to the Debtors' claim of exemptions is based on what he perceives to be "badges of fraud," including the fact that more than six months elapsed between the time the Debtors purchased the annuities and the time that they filed their petition. In particular, the Trustee directs the Court to NYD & CL § 283(1) which places a $5,000 limitation on annuities purchased within six months of filing a petition in bankruptcy. It appears that the Trustee is suggesting that by filing more than six months after purchasing the annuities, the Debtors intended to circumvent the limitation found in NYD & CL § 283(1). The argument might have some merit but for the fact that neither debtor purchased an annuity for more than $5,000.

The Trustee also argues that Mrs. Robinson is an "insider," as defined in Code § 101, and that any transfer of the real property proceeds to her should warrant particular scrutiny. The Trustee's focus appears to rest on the fact that the real property that was sold to Mr. Daily prepetition was titled in Mr. Robinson's name, but not in his wife's. The Trustee apparently has some concerns with the fact that the proceeds of the sale were used in part to purchase an annuity in her name alone.

Property interests generally are to be determined under state law. *See Butner, v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In *Alwell v. Alwell,* 98 A.D.2d 549, 471 N.Y.S.2d 899 (N.Y.A.D. 1984), the plaintiff had sold real property in Florida which she owned prior to her marriage to the defendant. *See id.* at 555, 471 N.Y.S.2d 899. A portion of the proceeds were used to purchase shares of common stock, half of which were registered in the defendant's name. The court noted that there was a presumption that the plaintiff had made a gift of the shares to the defendant, in the absence of any evidence to the contrary. *See id.* As

noted by the state court in *Imhof v. Imhof*, 259 A.D.2d 666, 686 N.Y.S.2d 825 (N.Y.A.D.1999),

> [s]eparate property can be transmuted into marital property when the actions of the titled spouse demonstrate his intent to transform the character of the property from separate to marital (citations omitted). Here, there is every indication that the husband intended to commingle his funds by depositing the proceeds of the sale of his separate property into joint accounts, and by sharing the proceeds for family and business purposes (citations omitted).

*Id.* at 667, 686 N.Y.S.2d at 826.

Under New York law and based on the facts presented at the Hearing, the Court concludes that it was Mr. Robinson's intent to make a gift of the monies used to purchase an annuity in his wife's name, thereby transforming the character of the proceeds into property which Mrs. Robinson was entitled to claim as exempt, absent any evidence of extrinsic fraud.

■ The courts, in determining whether there is evidence of extrinsic fraud involving the conversion of non-exempt assets to exempt assets, have examined several factors, including

> (1) whether there was fair consideration paid; (2) whether the debtor was rendered insolvent as a result of the transfer or whether the debtor was insolvent at the time of the transfer; (3) the amount of the transfer; (4) whether there is a genuine purpose for the transfer aside from avoiding creditors; (5) the length of time between the transfer and the filing of bankruptcy; (6) the amount of nonexempt property which the debtor had after the transfer; (7)

the debtor's failure to provide available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

*In re Moore*, 177 B.R. 437, 442 (Bankr. N.D.N.Y.1994) (citations omitted).

In this case, there has been no suggestion that fair consideration was not paid for the annuities. Based on the Debtors' testimony, it is evident that they were insolvent at the time they purchased the annuities. Mr. Robinson testified that they stopped using their credit cards after August 1999. According to their schedules, of the $94,968.96 in unsecured debt, only $6,862 was incurred after August 1999.[1] *See* Trustee's Exhibit A. They have no equity in their home, and their personal property totals $72,608.70 (*see* Trustee's Exhibit B).

With respect to the amount of the transfers at issue, the Trustee is objecting only to the $5,000 used to purchase the annuities. Mr. Robinson, at the age of 74, is still working in order to support the family. Because Mrs. Robinson's condition is deemed to have been "pre-existing," their insurance will not cover any expenses they may incur should she receive a kidney transplant. The Debtors testified that the annuities were purchased in anticipation of their future needs, particularly with respect to Mrs. Robinson's illness.

■ As noted by the court in *In re Johnson*, 124 B.R. 290 (Bankr.D.Minn. 1991), the purpose of exemption laws is

> to prevent private destitution and hardship, to support and stabilize the home and family unit, and to prevent impecunious debtors from burdening the public

---

**1.** Debtors list $6,862 as a debt which arose on November 15, 1999, in connection with a student loan for their son.

purse by resorting to charity and welfare programs. . . .

*Id.* at 296.

In this case, the Debtors clearly had a genuine purpose for the transfer. The fact that the transfer occurred approximately seven months before the Debtors filed their Petition does not appear to warrant much weight either way under the circumstances. As far as how much nonexempt property the Debtors identified in their schedules, that amounts to approximately $28,584, out of a total of $72,608 in personal property. *See* Trustee's Exhibit B. As noted above, they have no equity in their residence.

Finally, with respect to the final factor, the Court notes that both Debtors were forthright in their testimony, explaining that they had acted on the advice of counsel in seeking to maximize the exemptions to which they were entitled. The real property, which Mr. Robinson sold, had been on the market for some time and was not sold in contemplation of filing bankruptcy. The sale was clearly set forth in their Statement of Financial Affairs. They admitted to having used a portion of the proceeds to pay priority debt and to pay certain attorney's fees. The balance, after claiming $10,000 as exempt, of $2,761.92 was turned over to the Trustee. *See* Trustee's Exhibit C. There was no evidence that they had spent any of the monies on luxury goods. Instead, it appears that they used the monies with a view towards their needs in the future.

As noted by the bankruptcy court in *Johnson,*

[I]n general, the facts will fall into two different groupings. . . . The exempt property in question may have a limited and reasonable value; it may be naturally suited for maintaining modest daily needs for shelter and sustenance, or it may enable the debtor to maintain a degree of personal economic security by continuing to carry on a past profession or trade. If the debtor then actually uses such exempt property for these purposes, or reasonably intends to do so in the future, the facts sustain only one inference: the debtor intended only to make use of statutory protections and remedies in the manner intended by the state legislature and Congress. On the other hand, the debtor may convert nonexempt value to an exempt form without intending to give the new asset the reasonable use which follows from its nature, and/or may not utilize the exempt property for personal and family security and sustenance. These basic facts compel the opposite inference: the debtor intended only to temporarily "shelter" the value of the non-exempt asset from the claims of creditors.

*Johnson,* 124 B.R. at 295.

This Court finds that the facts fall into the first scenario. The annuities are of reasonable value and will be available to the Debtors in the future to assist with their daily needs, particularly with respect to Mrs. Robinson's anticipated medical expenses. This is as Congress intended. Accordingly, the Court concludes that the Debtors are entitled to the exemption of the $5,000 used to purchase two annuities of $2,500 each, as well as the $5,000 claimed as exempt on deposit in the bank accounts, the monies of which were derived from the sale of Mr. Robinson's interest in the real property in August 1999.

For the reasons set forth herein, it is

ORDERED that the Trustee's objection to the Debtors' claimed exemptions pursuant to NYD & CL § 283, including the two annuities of $2,500 each, is denied.