In re John J. **LYNCH**, Debtor.

No. 04–42795(BRL).

United States Bankruptcy Court, S.D. New York.

Feb. 10, 2005.

Davidoff Malito & Hutcher LLP, by Warren R. Graham, Esq., New York, NY, Attorneys for Chapter 7 Trustee.

John J. Lynch, Esq., New York, NY, Debtor, pro se.

### *MEMORANDUM DECISION AND ORDER DENYING TRUSTEE'S OBJECTION TO EXEMPTION*

BURTON R. LIFLAND, Bankruptcy Judge.

Roy Babitt, the Trustee ("Trustee") of the chapter 7 estate of John J. Lynch ("Debtor"), objects to the exemption asserted by the Debtor in Schedule "C" to his Schedules and Statements of Affairs with respect to a certain annuity (the "Annuity") in the amount of One Hundred Seventeen Thousand Five Hundred Seventy One ($117,571.00) Dollars.

**Background**

On September 20, 2004 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition"), for relief under chapter 7, title 11, United States Code (the "Bankruptcy Code"). The Debtor is a 78 year-old, semi-retired attorney. The Debtor asserted an exemption with respect to the Annuity pursuant to section 3212 of the New York Insurance Law. The Annuity was established in 2003 through CNA Structured Settlements in connection with the settlement of a personal injury action in which the Debtor had formerly represented the plaintiff. The Debtor agreed to

accept the Annuity as his portion of the legal fees incurred in the action.

The Trustee contends that the Annuity is not exempt because it is not an insurance policy. Rather, the Trustee contends that the Annuity is nothing more than a device employed by the Debtor to spread out a legal fee due to him whether for budgeting or tax planning purposes and thus, there is simply no reason why this asset should be put beyond the reach of the Debtor's creditors. Accordingly, the Trustee requests that the exemption claimed by the Debtor be disallowed and the proceeds of the Annuity be treated as an account receivable and available for administration by the Trustee in the Debtor's estate.

The Debtor argues that his monthly income, including the Annuity and social security payments, amounts to $3516.15 and his monthly expenditures amount to $3365.43. If the Annuity was invaded to pay creditors, it would create a hardship as he would not have enough income to pay necessary living expenses.

**Discussion**

■ As Congress has said:

The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge.

942 H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin. News, 5797, 6087; *Greene v. Balaber–Strauss* 76 B.R. 940, 941–942 (S.D.N.Y.1987) *aff'd,* 859 F.2d 148 (2d Cir.1988); *see also In re Robinson* 271 B.R. 437, 441–442 (Bankr.N.D.N.Y. 2001) *citing In re Johnson,* 124 B.R. 290, 296 (Bankr.D.Minn.1991) ("The purpose of exemption laws is to prevent private destitution and hardship, to support and stabi-

lize the home and family unit, and to prevent impecunious debtors from burdening the public purse by resorting to charity and welfare programs....").

Pursuant to section 522(b) of the Bankruptcy Code, the State of New York has elected to establish its own scheme for exemptions from property of a bankruptcy estate. Thus, in New York, personal bankruptcy exemptions are defined by Article 10–A of the Debtor and Creditor Law. *In re Tappan,* 277 B.R. 491, 491–492 (Bankr.W.D.N.Y.2002). Section 282 of the New York Debtor and Creditor Law provides that an individual debtor may exempt from the property of his bankruptcy estate "insurance policies and annuity contracts and the proceeds and avails thereof as provided in section three thousand two hundred twelve of the insurance law." *In re Trautman* 296 B.R. 651, 652 (Bankr. W.D.N.Y.2003). Section 3212(d)(1) speaks specifically to the standard for an annuity exemption:

The benefits, rights, privileges and options which, under any annuity contract are due or prospectively due the annuitant, who paid the consideration for the annuity contract, shall not be subject to execution.

*In re Tappan,* 277 B.R. 491, 491–492 (Bankr.W.D.N.Y.2002).

■ An annuity contract includes any obligation to pay certain sums at stated times, during life or lives, or for a specified term or terms, issued for a valuable consideration, regardless of whether such sums are payable to one or more persons, jointly or otherwise, but does not include payments under a life insurance policy at stated times during life or lives, or for a specified term or terms. N.Y. Ins. Law § 3212(2). Contrary to the bare assertions of the Trustee, and pursuant to the plain meaning of the statute, the Annuity

need not be an insurance policy. N.Y. Ins. Law § 3212(2); N.Y. Debt. & Cred. Law § 282.

In bankruptcy, the debtor will be allowed only a $5,000 exemption if the annuity contract was "initially purchased by the debtor within six months of the debtor's filing a petition in bankruptcy" and "not purchased by application of proceeds under settlement options of annuity contracts purchased more than six months before the debtor's filing a petition in bankruptcy or under settlement options of life insurance policies." N.Y. Debt. & Cred. Law § 283(1). If purchased more than six months before a bankruptcy filing, depending upon the "reasonable needs of the judgment debtor and his family, if dependent upon him," the debtor may be able to claim the entire annuity as exempt. 11 U.S.C. § 522. However, in the face of an objection, the bankruptcy court must then determine what amount of the annuity should go to the debtor's bankruptcy estate for the benefit of creditors and what amount should remain property of the debtor. Starr & Bandler, *Life Insurance and Annuities May Insulate Some Assets from Loss in Unexpected Bankruptcy Filings*, 72 N.Y. St. B.J. 28, 30–31 (July/Aug. 2000). The court may order the debtor to "pay to a judgment creditor . . . a portion of such benefits [under an annuity contact] that appears just and proper to the court, with due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him." *See* N.Y. Ins. Law § 3212(d)(2).[1] The Court of Appeals for the Fifth Circuit had a case before it with facts very similar to this one. The Fifth Circuit denied the claimed exemption in that case but subsequently overruled itself. *Young v. Adler (In re Young)*, 806 F.2d 1303 (5th Cir.1987), *overruled by Canfield v. Orso (In re Orso)*, 283 F.3d 686 (5th Cir.2002). In *Young*, the debtor, who was an attorney, had represented clients in a wrongful death claim against several companies. The debtor received monthly payments representing payment for legal services through an annuity contract executed as part of the claim's settlement. The debtor filed for bankruptcy and the trustee objected to the annuity payments and the annuity contract to remit future payments to the trustee.

The Bankruptcy Court held that the monthly payments to the debtor-attorney made by a client for legal services were not exempt under the Louisiana exemption statute[2] because they were not a true annuity and the District Court affirmed. *In re Young*, 64 B.R. 611 (E.D.Lou.1986) *aff'd*, 806 F.2d 1303 (5th Cir.1987), *overruled by In re Orso* 283 F.3d 686 (5th Cir.2002). The District Court found that the payments were nothing more than installment payments on debts to cover the attorney's fees owed, and thus were part of the bankruptcy estate. The District Court considered the form of the arrangement noting that: "an annuity is a right to receive fixed, periodic payments, either for life or for a term of years whereas an account receivable is a claim against a debtor usually arising from sales or ser-

---

1. As an initial matter, in view of this authority, coupled with Trustee's counsel's statement on the record to the effect that he does not question the need for the annuity to cover the Debtor's necessary living expenses, it is unclear why the Trustee lodged this objection at all.

2. § 647. Exemption of proceeds; . . . annuity

The lawful beneficiary . . . or payee . . . of an annuity contract . . . shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant . . . and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee . . . existing at the time the proceeds or avails are made available for his own use . . .

vices rendered." *Id.* at 614. The Court further noted that the determining characteristic of an annuity is that the

> annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived. The purchase of the annuity surrenders all right and title in and to the money he pays for it. On the other hand, where a debtor agrees to pay his creditor in installments at regular intervals, the debt or principal sum itself is due to the creditor although payable only in manner agreed upon; "it is an account receivable in which he has a property interest. Therefore, installment payments of a debt, or payments of interest on a debt, do not constitute an annuity."

*Id.* at 615, (citing *inter alia Commonwealth v. Beisel,* 338 Pa. 519, 13 A.2d 419, 421 (1940)).

In its first iteration construing the annuity issue, the Fifth Circuit affirmed the District Court's decision, holding that it is the "substance of the arrangement rather than the label affixed to it that determines whether the payment are exempt." 806 F.2d at 1307. The Court noted that had the debtor accepted the total fees at the time when the contract was formed, paid taxes on the income and then purchased the annuity policy with the remainder, the payments would clearly be exempt as the debtor would have transferred his interest in the funds as consideration for the periodic payments he was to receive. However, the Court found that retaining a right against the underwriters to the remaining principal until the debt is fully extinguished rendered the transaction nothing more than an account receivable. *Id.*

The Fifth Circuit subsequently revisited the issue in *Canfield v. Orso (In re Orso),* 283 F.3d 686 (5th Cir.2002), and reversed its holding in *Young,* holding instead that annuities purchased pursuant to structured personal injury settlements that complied with federal income tax requirements were exempt under the Louisiana exemption statute. The Court acknowledged that there were many distinguishing facts between the arrangement in *Young* and the one in *Orso,* but expressly overruled *Young* because "in the end the legal principles governing the two situations were indistinguishable." *Id* at 694. The Court held that a plain reading of Louisiana's annuity exemption statute lead naturally to the conclusion that the proceeds were exempt, and that unless some "extraneous legal impediment prevents the financial products that produce the stream of monthly proceeds from being 'annuity contracts' within the intendment of the statute," the exemption should be granted. *Id.* at 693. The court also noted that when the Louisiana legislature enacted that state's Insurance Code, it specified that the proceeds and avails of annuity contracts are exempt from all liability. *Id.*

In an unwritten decision, rendered from the bench on March 14, 2002, Judge Eisenberg followed the *Orso* decision in the case of *In re Stahlman,* Case No. 01–82000–478 (Bankr.E.D.N.Y.2001). *See* Robert L. Pryor, *Exemptions for Personal Injury Structured Settlements,* New York Law Journal, (9/21/2004 NYLJ 16, col. 1). In *Stahlman,* the Court found that notwithstanding the fact that the annuity emanated from a structured settlement of a personal injury award, it nevertheless qualified as an annuity with the meaning of section 3212 of the New York Insurance Law and was therefore exempt. The Court determined that the requirement that the exemption could only be taken by the person "who paid consideration for the annuity contract" was met by the fact that the debtor had relinquished her rights against the defendant and agreed to accept her payment over time instead of in a lump sum.

The Court also addressed the issue that such an expansive interpretation of the annuity statute could be utilized by a debtor to promote a "head start" rather than a "fresh start" concluding that in the event a trustee could establish that such a structured settlement was funded by the purchase of an annuity with the intent to hinder, delay or defraud creditors, such intent might taint the exempt status of such annuity.[3] *Id. See also In re Robinson,* 271 B.R. 437 (Bankr.N.D.N.Y.2001) (conversion of nonexempt real property into exempt annuities for $5,000 made seven months before filing a petition and upon the advice of counsel was allowed under the following circumstances: lack of evidence of extrinsic fraud, debtors were elderly and insolvent but paid fair consideration, husband was 74 years old and was continuing to work to support his family, his wife was in ill health, the annuities were purchased in anticipation of their future needs, the conversion was made seven months before the bankruptcy petition was filed); *In re Moore,* 177 B.R. 437 (Bankr. N.D.N.Y.1994) (annuity purchased prebankruptcy was fully exempt to extent it was purchased with funds rolled over from settlement options in debtors' life insurance policy, and $5,000 exemption limitation for annuities applied only to portion of annuity purchased with nonexempt assets. Debtors' prebankruptcy purchase of annuity with nonexempt stock proceeds was not done with actual intent to hinder, delay or defraud creditors and could not be avoided as fraudulent.).

The Second Circuit Court of Appeals has held that a transfer before bankruptcy of non-exempt assets does not ipso facto compel the conclusion that there was an actual intent to hinder, delay, or defraud creditors; rather, intrinsic evidence of an actual intent to hinder, delay, or defraud creditors must be established beyond the mere fact of the transfer. *In re Adlman,* 541 F.2d 999, 1002–1003 (2d Cir. 1976). The Trustee, as objector to the claimed exemption, bears the burden of proof. Fed R. Bankr.P. 4003(c); *In re Moore,* 177 B.R. at 442.

At the hearing on this motion, Trustee's counsel admitted that he had no basis to allege fraud. Instead his sole objection to the exemption was that it did not fit within the meaning of the New York Insurance Law. In addition, Trustee's counsel conceded that he had no grounds to challenge the Debtor's claim that the Annuity is required for necessary living expenses.

**Conclusion**

Accordingly, for the reasons set forth, the Trustee's motion to deny the Debtor's Annuity exemption is denied.

IT IS SO ORDERED.

---

**3.** In determining whether there is evidence of extrinsic fraud involving the conversion of non-exempt assets to exempt assets, court have examined several factors, including (1) whether there was fair consideration paid; (2) whether the debtor was rendered insolvent as a result of the transfer or whether the debtor was insolvent at the time of the transfer; (3) the amount of the transfer; (4) whether there is a genuine purpose for the transfer aside from avoiding creditors; (5) the length of time between the transfer and the filing of bankruptcy; (6) the amount of nonexempt property which the debtor had after the transfer; (7) the debtor's failure to provide available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition. *In re Robinson* 271 B.R. 437, 441 (Bankr.N.D.N.Y.2001) (citing *In re Moore,* 177 B.R. 437, 442 (Bankr.N.D.N.Y.1994)).