**In re James W. DUNBAR and Sandra K. Dunbar, Debtors.**

**Richard E. Barber, not personally, but as Chapter 7 Trustee for James W. Dunbar and Sandra K. Dunbar, Plaintiff,**

v.

**James W. Dunbar, Sandra K. Dunbar, and CNH Retirement Savings Plan, as Trustee of the § 401(k) Plan of James W. Dunbar, Defendants.**

**Bankruptcy No. 01–84333.**
**Adversary No. 02–8101.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 19, 2004.

Barry M. Barash, Galesburg, IL, Attorney for Plaintiff.

Charles E. Covey, Peoria, IL, Attorney for Debtors.

Richard E. Barber, Galesburg, IL, Chapter 7 Trustee.

Mark L. Metz, Milwaukee, WI, Attorney for CNH.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This matter came on for trial on the amended complaint filed by Richard Barber, as Chapter 7 Trustee (TRUSTEE) of the estate of James and Sandra Dunbar, the Debtors (individually referred to as JAMES or SANDRA and collectively referred to as the DEBTORS), against the DEBTORS and CNH Retirement Savings Plan (CNH PLAN), as Trustee of the 401(k) plan of James Dunbar, to avoid, as a fraudulent transfer, the prepetition repayment of a sizeable loan borrowed from JAMES' 401(k) account.

## FACTUAL AND PROCEDURAL BACKGROUND

JAMES has worked at Case New Holland for thirty years. By reason of his employment, he participates in the CNH PLAN, an ERISA qualified 401(k) retirement savings plan. On May 4, 2001, approximately five months before bankruptcy, JAMES withdrew, in the form of a loan, $39,800 from his CNH PLAN account. Of those proceeds, the sum of $30,000 was deposited into the DEBTORS' savings account, $9,600 was deposited into their checking account, and $200 was taken in cash. After making a few payments on the loan, the DEBTORS decided to repay it in full, transferring $8,423.18 from their checking account back to their savings account along with $2,000 in cash which had been withdrawn in June. The loan was repaid on July 5, 2001, by a cashier's check drawn on the DEBTORS' savings account in the amount of $38,823.18. After the withdrawal, the DEBTORS' savings account balance was less than $300.00.

The DEBTORS filed a Chapter 7 petition on October 11, 2001, and properly disclosed the loan repayment in their Statement of Financial Affairs. The DEBTORS each scheduled and claimed as exempt their interest in two separate 401(k) plans, JAMES' valued at $130,000 and SANDRA'S valued at $65,216. The TRUSTEE filed a timely objection to the DEBTORS' claim of exemption in the monies transferred to the CNH PLAN in repayment of the loan. A stipulated order was entered in the Chapter 7 case providing that if the TRUSTEE was successful

in avoiding and recovering the loan repayment, the monies would not be exempt but would be available for distribution in accordance with the provisions of the Bankruptcy Code. If, however, the TRUSTEE would not prevail in the adversary proceeding to recover the transfer, JAMES' entire interest in the retirement fund would be exempt.[1] The DEBTORS were issued a discharge on February 4, 2002.

The TRUSTEE brought this adversary proceeding against the DEBTORS and the CNH PLAN pursuant to Section 548 of the Bankruptcy Code, alleging that the loan repayment was a fraudulent transfer. In his original complaint, the TRUSTEE alleged, pursuant to Section 548(a)(1)(A), that the transfer was made with actual intent to hinder, delay or defraud creditors. After both the DEBTORS and the CNH PLAN answered the complaint denying the allegations that the transfer was made with fraudulent intent, the TRUSTEE filed a motion for judgment on the pleadings, alleging that despite the DEBTORS' denial that the transfer was made with fraudulent intent, their admissions of the withdrawal, commingling and repayment entitled the TRUSTEE to a judgment against the CNH PLAN. The TRUSTEE concurred with the CNH PLAN that, if awarded, such a judgment would attach only as to the assets held for JAMES and the TRUSTEE further acknowledged that he was not seeking a personal judgment against the DEBTORS. The Court denied the TRUSTEE'S motion, finding that the disputed issue as to the DEBTORS' intent was both genuine and material, but granted his request for leave to file an amended complaint.

Switching horses, the TRUSTEE'S amended complaint asserts a single cause of action for constructive fraud under Section 548(a)(1)(B). In their answer to the amended complaint, the DEBTORS denied that the loan repayment was constructively fraudulent. The CNH PLAN reasserted as an affirmative defense that any recovery by the TRUSTEE be limited to those assets held in the DEBTORS' individual account and asserted as a cross-claim a request for declaratory judgment by the Court concerning the effect of the avoidance of the transfer on the CNH PLAN. Specifically, the CNH PLAN sought a determination, if the transfer were to be avoided and recovered from the CNH PLAN, whether the loan would be reinstated or discharged, and if the loan would be discharged that it be authorized to report the discharged loan to the IRS as a "deemed distribution," notwithstanding the discharge injunction. The DEBTORS filed a response to the cross-claim, contending that ERISA bars the CNH PLAN from turning over any of the funds in their retirement account to the TRUSTEE and that the CNH PLAN has an affirmative duty to defend the assets against claims of creditors such as the TRUSTEE.

Thereafter, the TRUSTEE notified the Court that the matter was settled and filed a notice of compromise. According to the notice, the DEBTORS had offered to settle the TRUSTEE'S claim for $20,173.01, with funds to be obtained from JAMES' account with CNH PLAN. The CNH PLAN was not a party to that agreement, however, nor did it receive notice of the TRUSTEE'S notice of compromise. No objections were filed by creditors and the Court approved the settlement on April 3, 2003. The settlement was not effectuated because the DEBTORS could not borrow the funds from the CNH PLAN or from any

---

1. The stipulation reflects the rule of Section 522(g) of the Bankruptcy Code, that a debtor may not exempt property recovered by the trustee through the avoidance powers if the avoided transfer was voluntary. 11 U.S.C. § 522(g).

other source, and the matter was returned to the trial calendar.[2]

At the trial, the TRUSTEE offered nine exhibits and the DEBTORS offered three, all of which were admitted without objection. No testimony was offered. The TRUSTEE, the CNH PLAN and the DEBTORS agreed that there were no contested issues of fact. The TRUSTEE reiterated his position that he was asserting a constructive fraud theory only and was not seeking to avoid the loan repayment as a transfer made with actual intent to defraud creditors. The Court took the matter under advisement. A memorandum of law was filed by each party.

## ANALYSIS

■ In order to recover a transfer under Section 548(a)(1)(B) as constructively fraudulent, the trustee must establish each of the following elements: (1) that an interest of the debtor in property was transferred; (2) that the transfer of that interest occurred within one year before the date of the filing of the bankruptcy petition; (3) that the debtor received less than "reasonably equivalent value" in exchange for the transfer at issue; and (4) that the debtor was insolvent on the date of the transfer or became insolvent because of the transfer. *In re GWI PCS 1 Inc.*, 230 F.3d 788 (5th Cir.2000), *cert. denied*, 533 U.S. 964, 121 S.Ct. 2623, 150 L.Ed.2d 776 (2001). Here, neither the second nor the fourth element of the TRUSTEE'S claim is disputed.

The CNH PLAN makes four arguments in opposition to the TRUSTEE'S right to recover the loan repayment. First, it contends that the DEBTORS did not "transfer" their interest in property by "moving"

it from their savings account to JAMES' retirement account. Alternatively, if the Court finds that a transfer did in fact occur, it contends that the DEBTORS did not receive less than a reasonably equivalent value. Characterizing itself as a custodian, the CNH PLAN also claims that it is not a "transferee" from whom the transfer can be recovered under Section 550 of the Bankruptcy Code, because it never had dominion or control over the funds such that it could use them for its own purposes. Finally, the CNH PLAN argues that even if this Court determines that the transfer is avoidable under Section 548(a)(1)(B) and recovery can be had against it under Section 550(a), the funds in an ERISA-qualified plan are excluded from the bankruptcy estate and are beyond the reach of the TRUSTEE'S avoidance powers.

The TRUSTEE'S focus is upon the absence of the CNH PLAN'S legal right to compel JAMES to repay the loan. According to the TRUSTEE, the advance of monies by the CNH PLAN to JAMES was not a "true loan" and that no debtor/creditor relationship resulted from the transaction. The TRUSTEE asserts that absent a claim against JAMES, the repayment of funds is *"ipso facto"* a fraudulent conveyance.

■ The prefatory issue to be determined is whether the repayment was a "transfer" for purposes of determining whether an avoidable transfer has occurred. The term transfer is a key one that appears throughout the Bankruptcy Code. It is defined in Section 101, the definitional section of the Bankruptcy Code, as follows:

**2.** Unbeknownst to the TRUSTEE or to his own attorney, JAMES had taken out a postpetition loan from his 401(k) account in the approximate amount of $40,000 to purchase two vehicles. Because the CNH PLAN pro-

hibits participants from having more than one loan outstanding at a time, JAMES was unable to borrow the additional funds needed to pay the TRUSTEE.

"[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. § 101(54). That this definition is one of very broad meaning, is reflected in the legislative history:

A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible.... Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property. A deposit in a bank account or similar account is a transfer.

S.Rep. No. 95–989, 95th Cong.2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5813. This definition is applicable to all provisions of the Bankruptcy Code. The hallmark of a "transfer" is a change in the rights of the transferor with respect to the property after the transaction. *In re Feiler*, 218 B.R. 957 (Bankr.N.D.Cal.1998), *aff'd* 218 F.3d 948 (9th Cir.2000).

Contending that the DEBTORS were only "moving" their funds from one account to another, the CNH PLAN relies on *In re Messia*, 184 B.R. 176 (Bankr. D.Mass.1995), a case involving a Chapter 7 debtor's prepetition declaration of homestead. Considering the definition of "transfer" in conjunction with Section 548(d)(1), which defines when a transfer is deemed to have occurred, the court concluded that a transfer requires the acquisition of some interest by a third party.[3] In this Court's view, the *Messia* court's reliance on Section 548(d)(1) was misplaced, because that provision has nothing to do with the determination of whether a particular transaction constitutes a transfer. *In re Hulm*, 738 F.2d 323 (8th Cir.1984) (Section 548(d)(1) only determines *when* a transfer is deemed to have occurred, not whether a certain occurrence is a transfer). Moreover, the court in *Messia* carefully distinguished the facts before it from an improper conversion of a nonexempt asset to an exempt one, suggesting that such a scenario might call for a different interpretation to be given to the term "transfer."

Much closer to the facts of the present case is the court's determination in *In re Pulliam*, 279 B.R. 916 (Bankr.M.D.Ga. 2002), that the debtor's return of funds withdrawn from his individual retirement account within the sixty-day period permitted for tax-free rollovers constituted a transfer for purposes of Section 548(a). Because possession of the withdrawn funds changed from the debtor to the custodian of the IRA, placing the funds beyond the reach of the debtor's creditors, the court found that a transfer had been made.[4] Similarly, the court in *In re Levine*, 134 F.3d 1046 (11th Cir.1998), held that the debtor's purchase of an annuity constituted a transfer under Florida's fraudulent transfer law because even though the debtor remained the technical owner of the asset, he neither retained total control

---

**3.** Under Section 548(d)(1), a transfer is deemed made when it becomes so perfected that a bona fide purchaser cannot acquire a superior interest in the property. 11 U.S.C. § 548(d)(1).

**4.** In *Pulliam*, the debtor never cashed the IRA distribution check, holding on to it until he endorsed it back to the bank for deposit in his IRA.

over or unfettered access to the property.[5]

This interpretation of the term "transfer" is consistent with that given under other sections of the Bankruptcy Code. Under Section 727(a)(2)(A), a debtor who "transfers" property with the intent to hinder, delay or defraud creditors within one year of the filing of the petition, is not entitled to a discharge of his debts. 11 U.S.C. § 727(a)(2)(A). For purposes of this provision, a conversion of nonexempt property to exempt property is unquestionably considered to be a "transfer." *See, In re Carey*, 938 F.2d 1073 (10th Cir.1991); *Matter of Smiley*, 864 F.2d 562 (7th Cir.1989); *In re Davidson*, 178 B.R. 544 (S.D.Fla.1995) (conversion of a nonexempt asset to an exempt annuity constitutes a "transfer" under Section 727(a)(2)); *In re Levine*, 166 B.R. 967 (Bankr. M.D.Fla.1994).[6]

In *Smiley*, the debtors, with funds obtained by increasing the mortgage on their current residence, borrowing against Mr. Smiley's life insurance and pledging an unencumbered note as security for a personal loan of $200,000, purchased a residence in Kansas which they believed would be exempt. The exemption was denied, however, in their Chapter 7 bankruptcy case. Noting the expanded definition of "transfer" under the Bankruptcy Code, the court rejected the debtors' contention that no transfers had occurred because the exemption in the Kansas property was denied, stating that the allowance of an exemption in property is separate from and subsequent to the issue of whether a transfer of property was made by the debtor.

Holding that Mr. Smiley's discharge should be denied under Section 727(a)(2), the Seventh Circuit concluded that the attempt to convert nonexempt property into exempt property, even though the exemption claim was ultimately denied, fell within the broad scope of the Bankruptcy Code definition of "transfer," notwithstanding the absence of a separate transferee. Even though *Smiley* is a denial of discharge case, the court's interpretation of the defined term "transfer," as applied to an attempted conversion of non-exempt property to exempt, is controlling Circuit authority that is binding on this Court. Accordingly, the Court concludes that the remittance of funds from the DEBTORS' savings account to JAMES' 401(k) plan was a "transfer" for purposes of Section 548(a)(1).

■■■ The second ground asserted by the CNH PLAN to defeat the TRUSTEE'S avoidance action under Section 548(a)(1)(B) is that the DEBTORS received reasonably equivalent value in ex-

---

5. The bankruptcy court's ruling that a transfer requires two distinct identifiable parties, both a transferor that parts with an interest in property and a transferee who acquires that interest, was reversed by the district court on appeal. On appeal after remand, the Eleventh Circuit noted the bankruptcy court's apparent departure in *In re Schwarb*, 150 B.R. 470 (Bankr.M.D.Fla.1992), a case involving a trustee's objection to a debtor's claim of exemption, from its prior ruling in *Levine*. The same bankruptcy court, ruling in the same case on a complaint to deny the debtor's discharge under Section 727(a)(2), completed its turnaround, holding that a transferor can be his own transferee. *See note 6, infra.*

6. Explaining its conclusion that the conversion of assets was a transfer, the court stated:

> The initial difficulty ... is that, as a general proposition, a "transfer" presupposes a "transferor" and "transferee," and if both the transferor and the transferee are the same, it appears conceptually difficult to accept the proposition that transfers in fact occurred. However, when one considers the net effect of the transfer in light of the extremely broad definition of that term as defined in [§ 101], such difficulty ceases to be problematic.

166 B.R. at 970.

change for the transfer of funds from their savings account into JAMES' retirement plan. In many instances, this is the most difficult element of the constructive fraud analysis. The first step in the determination of reasonably equivalent value under Section 548(a)(1)(B) is whether the debtor received value in exchange for the transfer. *Anand v. National Republic Bank of Chicago,* 239 B.R. 511 (N.D.Ill.1999). "Value" is defined to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor ...." 11 U.S.C. § 548(d)(2)(A). The second step measures the value of what the debtor received against the value of what was transferred. *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1234–35 (7th Cir.1990). Reasonable equivalence is a question of fact that depends on the particular circumstances surrounding the transaction in question. *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir.1997). The burden of proving lack of reasonably equivalent value under Section 548 rests on the trustee. *Id.*

██ Standing in the shoes of the DEBTORS, there is no question that reasonably equivalent value was received for the transfer. Although mathematical exactitude is not required, as with all transfers between accounts, the amount of the debit to the savings account is equal to the amount of the credit to the 401(k) account. There is no issue of relative value. The TRUSTEE identifies the malefaction, however, as the conversion from a nonexempt account to an exempt account. From the perspective of creditors, the transfer obviously harmed them. Immediately prior to the transfer, the creditors had a nonexempt account balance of almost $39,000 to look to for satisfaction of their debts, whereas the transfer resulted in the complete elimination of those funds as an available source of repayment. From the creditors' perspective, no value was realized in exchange for the withdrawal from the nonexempt account.

██ It is from the DEBTORS' perspective, however, that the value received must be viewed. The language of the statute is plain—the transfer is not avoidable if the debtor received reasonably equivalent value. The statute does not require that the net value of the debtor's estate available for distribution to creditors remain the same.[7] Under a balance sheet analysis, the DEBTORS' net worth is the same post-transfer as pre-transfer. The reasonable equivalence standard is satisfied, notwithstanding the shift to an exempt asset. *See, Matter of Loomer,* 222 B.R. 618 (Bankr.D.Neb.1998) (debtor received reasonably equivalent value for both voluntary contributions and loan repayments made to retirement plan.)

██ Even if this Court would measure the reasonably equivalent value from the perspective of the DEBTORS' creditors, it would not necessarily reach the result sought by the TRUSTEE. Courts recognize that the determination of reasonably equivalent value depends upon the circumstances of each case. This case does not merely involve the conversion of a nonexempt asset into exempt asset, but rather the reconversion of an exempt asset. Prior to obtaining the loan in May, 2001, the funds in JAMES' account in the CNH PLAN were fully exempt and represented a significant portion of his retirement nest egg. Upon receipt, nearly three-fourths of the funds were deposited in the DEBTORS' savings account and remained there

---

7. In contrast, Section 547(b)(5) imposes a hypothetical liquidation test as one of the elements of proof for avoiding a preferential transfer.

untouched until the loan was repaid.[8] Viewing the withdrawal and repayment as parts of a broader transaction, when JAMES elected to repay the monies, the *status quo ante* was restored and no harm resulted to innocent creditors.[9]

 To hold under the facts here, that constructive fraud has been proved, would permit the trustee to recover every exempt asset converted from a nonexempt asset by an insolvent debtor. That result would run contrary to the firmly embedded and longstanding bankruptcy policy that permits debtors to convert nonexempt property into exempt property in order to maximize the exemptions to which they are entitled.[10] *In re Stern,* 345 F.3d 1036 (9th Cir.2003), *cert. den.* —— U.S. ——, 124 S.Ct. 1657, 158 L.Ed.2d 356 (2004); *Smiley,* 864 F.2d at 565; *Matter of Reed,* 700 F.2d 986, 990 (5th Cir.1983). The rationale underlying that rule is obvious. Given the minimal nature of exemption allowances in many jurisdictions, it would be a harsh result to deny debtors the right to convert property into allowable exempt property in order to effectuate the fresh start that the bankruptcy law is designed to insure. *Reed,* 700 F.2d at 990. That principle is not without limitation, however, and a debtor's claim of exemption will be denied if the conversion was made with actual intent to defraud creditors.[11] *See, In re Wadley,* 263 B.R. 857 (Bankr. S.D.Ohio 2001). Alternatively, and most preferably, the trustee could seek to avoid the transfer based on actual fraud. *See, Loomer, supra.* Even worse for the debtor, his discharge could be denied. *See, Smiley, supra.* "Reasonably equivalent value" should be interpreted to effectuate the policies underlying the Bankruptcy Code, especially where more appropriate remedies are available to the TRUSTEE.[12]

8. There is little, if any, significance to be placed upon the "commingling" of the exempt funds with nonexempt funds, or upon the inability to trace the repaid funds to the previously withdrawn funds, dollar for dollar. Account debits and credits are intangible representations of money, in the form of the drawee's promise to pay. In circumstances such as those before the Court, the focus should be on the debtor's intent, not on the physical or metaphysical path traveled by the asset in question.

9. The UFTA excludes exempt property from the definition of "assets." 740 ILCS 160/2(b)(2). A transfer of fully exempt property cannot be avoided as fraudulent under the UFTA. *In re Blanch,* 1998 WL 34065289 (Bankr.C.D.Ill.1998).

10. The legislative history of Section 522 provides:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing of the bankruptcy petition. This practice *is not* fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law. (Emphasis in original).

H.R. REP. 95–595, at 361 (1977), *reprinted in,* 1978 U.S.C.C.A.N. 5968, 6317; S. REP. No. 95–989 at 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862, *quoted in In re Crater,* 286 B.R. 756 (Bankr.D.Ariz.2002).

11. This principle is one of degree, often portrayed as the "pig rule," with the point of excess described "when a pig becomes a hog." *In re Zouhar,* 10 B.R. 154, 157 (Bankr. D.N.M.1981). A finding of actual intent may be based on circumstantial evidence or on inferences drawn from a course of conduct. In making this determination, a court will consider all the surrounding facts and circumstances. Here, the DEBTORS' postpetition reborrowing of the funds in order to purchase two vehicles may have been evidence of an earlier intent to temporarily shield the monies from their creditors. As far as the constructive fraud issue before the Court, however, their subsequent conduct is entirely irrelevant.

12. Nothing in the record clues the Court in as to why the TRUSTEE abandoned his claim premised on actual fraud. Perhaps it was his belief that the DEBTORS were only taking advantage of a right to which they were entitled under the law.

This case proves the rule that a debtor's conversion of a nonexempt asset to an exempt asset is avoidable, if at all, only on an actual fraud theory, not on a constructive fraud theory.

This Court concludes that the DEBT-ORS received reasonably equivalent value in exchange for making the loan repayment. The TRUSTEE cannot avoid the loan repayment under Section 548(a)(1)(B) for constructive fraud. Having abandoned his claim that the loan repayment was made with the actual intent to defraud, hinder or delay creditors under Section 548(a)(1)(A), the TRUSTEE'S complaint must fail. Because the loan repayment is not avoidable by the TRUSTEE, the Court need not reach the CNH PLAN'S contentions that it is not a transferee under Section 550(a)(1) and that the exclusion of the DEBTORS' interest in the CNH PLAN from the bankruptcy estate under Section 541(c)(2) prevents the TRUSTEE from exercising any rights or claims over that property.[13] In accordance with the stipulated order, JAMES' claim of exemption in the funds in the CNH PLAN will stand. Given this ruling, the CNH PLAN'S cross-claim is moot.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY OR-DERED that the transfer of funds from the Debtors' savings account to James W. Dunbar's 401(k) account is not avoidable as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) and Judgment is entered in favor of the Defendants and against the Plaintiff with the parties to bear their own costs.

---

13. This important issue involving a trustee's power to avoid a prepetition transfer made to a qualified retirement plan because a debtor's interest in such a plan is excluded from the bankruptcy estate under Section 541(c)(2) was not decided by the Supreme Court in *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon,* —— U.S. ——, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004).